CCG ASSOCIATES I, as Limited Partner in TIFFANY PLACE ASSOCIATES, on Behalf of Itself and, Derivatively, in the Right of TIFFANY PLACE ASSOCIATES, a Limited Partnership, Appellant, v RIVERSIDE ASSOCIATES, Individually and as General Partner and Liquidating Trustee of TIFFANY PLACE ASSOCIATES, et al., Respondents.

First Department, June 5, 1990

## APPEARANCES OF COUNSEL

*Gregory M. Petrick* of counsel *(Edwin David Robertson* and *Kathleen M. McLeod* with him on the brief; *Cadwalader, Wickersham & Taft,* attorneys), for appellant.

*Marc D. Powers* of counsel *(Steven J. Shore* with him on the brief; *Schwarzfeld, Ganfer & Shore,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, J.

CCG is a limited partner in Tiffany Place Associates, a New York limited partnership formed under a March 22, 1985 agreement for the purpose of purchasing, rehabilitating and

selling the premises located at 102 Kane Street, Brooklyn, New York, as individual residential units. Riverside Associates, a New York General Partnership, is the managing general partner of Tiffany Place. The individual defendants Scharf and Susan Diamond are also general partners.

Beginning in 1986, Tiffany Place offered residential living units and automobile parking units at the premises for sale. By July 29, 1987, it had sold all 70 living units and all 14 parking units. Thereafter, CCG sought an accounting of Tiffany Place's assets, liabilities and operations as, it contends, is provided for by the limited partnership agreement. When Riverside failed to respond, CCG, on behalf of itself, and derivatively, on behalf of Tiffany Place, commenced this action to compel an accounting, alleging that Riverside had refused to account for capital contributions, costs, expenses, and disbursements of net cash flow and capital proceeds of Tiffany Place.

CCG's claim for an accounting is based on paragraphs 21 and 23 of the March 22, 1985 agreement. Paragraph 23 requires Riverside, as liquidating trustee of Tiffany Place, to make an accounting upon dissolution "as of and through the last day of the month in which the dissolution occurs." While paragraph 3 of the agreement provides that termination is to take place on December 31, 2025, paragraph 21 (a) provides for dissolution upon the occurrence of either of two earlier events:

"(ii) [t]he Partnership shall no longer have any interest in the Property [defined in paragraph 2 as the 'premises located at 1 Tiffany Place a/k/a 102 Kane Street, Brooklyn, New York'], including, without limitation, any interest in a purchase money mortgage or entity owning the Property; or * * *

"(v) the sale or transfer or condemnation of all or substantially all of the Property, except for a sale or transfer of the Property in connection with a sale-leaseback financing transaction or a transaction in which the Partnership acquires a purchase money mortgage and/or a deed to secure debt."

Riverside and the individual defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) on the ground, *inter alia,* that Tiffany Place was not dissolved under paragraph 21 of the partnership agreement because it had entered into arrangements that it characterized as a "sale-leaseback" and held an interest in the property, i.e., a purchase-money mort-

gage on a parking unit to secure a $10,000 loan. Defendants also argued that the partnership had already provided CCG and the other limited partners with an "interim accounting". In opposing the motion, a CCG partner rejected the purported interim accounting, noting that it failed to account for any income or capital of or loans to the partnership or to allocate any of the costs it purported to report. Furthermore, he pointed out, a general partner had not sworn to its accuracy and, indeed, the accounting firm that prepared it disclaimed any responsibility for its accuracy and disavowed any suggestion that it certified its truth. Moreover, the CCG partner disputed the significance of the parking unit purchase-money mortgage, noting that it was a purchase-money mortgage on a unit appurtenant to the property, not a purchase-money mortgage on the property itself. Furthermore, he argued, the mortgage amounted to a .00408652% interest in the property overall. Thus, he argued, 99.995% of Tiffany Place's interest in the property had been sold, which interest, he contended, satisfied the "substantially all" language of the partnership agreement. In addition, he argued that the transactions involving the five units are not sale-leaseback agreements since Tiffany Place did not "leaseback" any units it sold, but merely agreed with the purchaser that it would have the power to lease the property to another third party.

█ Although rejecting the significance of the purported sale-leaseback transactions since they amounted to no more than a sale and lease to third parties, not the partnership, the motion court granted the motion. Specifically, it found that an event of dissolution had not occurred under paragraph 21 of the partnership in light of Tiffany Place's retention of a purchase-money mortgage on the parking unit. Thus, since all of the property had not been sold, CCG had no right to an accounting. The court did not address CCG's argument that Tiffany Place's sale of 99.995% of the property constituted a sale of "substantially all" of the partnership's property thereby triggering dissolution under paragraph 21 (a) (v). Nor did it address CCG's request that, since an accounting was just and reasonable in the circumstances, Riverside be directed to account pursuant to Partnership Law § 99 (1) (b). We reverse.

█ While we reject CCG's argument, based on a hypertechnical distinction between "property" and "unit", that Tiffany Place's mortgage on a parking unit is not an interest in the

property,* we find that the motion court erred in not accepting CCG's argument based on the "all or substantially all" language of paragraph 21 (a) (v). With respect to CCG's claim that an event of dissolution has occurred under paragraph 21 (a) (ii), suffice to say the relevant inquiry is, as the motion court noted, whether Tiffany Place retained "any interest in the [p]roperty, including * * * any interest in a purchase money mortgage." Given the breadth necessarily indicated by the use of the word "any", we reject the argument that there is ambiguity in the limited partnership agreement as to whether "property", defined as the 102 Kane Street premises, includes the parking space. The agreement makes no distinction between a parking unit at the property and the property itself.

When an agreement's terms are clear and unambiguous, there is no need to resort to other means of interpretation to determine their meaning. *(Matter of Western Union Tel. Co. v American Communications Assn.,* 299 NY 177, 184.) Rather than rewrite an unambiguous agreement, a court will enforce its plain meaning. *(Laba v Carey,* 29 NY2d 302, 308.) Moreover, parol evidence of the parties' intentions as to the terms of a contract is inadmissible when the contract is unambiguous. *(Mercury Bay Boating Club v San Diego Yacht Club,* 76 NY2d 256; *Namad v Salomon Inc.,* 74 NY2d 751, 753.)

■ With respect to the claim of dissolution upon the sale or transfer of "all or substantially all of the [p]roperty" under paragraph 21 (a) (v) of the March 22, 1985 agreement, a sale of an interest in the property undisputedly in excess of 99.9%, without retention of any interest, mortgage lien or otherwise, to secure a debt, plainly constitutes a sale of "substantially all" of Tiffany Place's property and triggered Riverside's duty to account. *(See, Renel Constr. v Brooklyn Coop. Meat Distrib. Center,* 59 AD2d 391, 398, *affd* 46 NY2d 859.) If a sale of "substantially all of the [p]roperty" does not include a sale of an interest greater than 99.9% then the phrase is bereft of all meaning.

■ CCG contends that it is also entitled to an accounting

---

* In support of its argument CCG cites Real Property Law § 339-e (11) and (14), which, it contends, make a distinction between "property" and a "unit" of property. Section 339-e (11) of the Condominium Act (Real Property Law § 339-d *et seq.)* defines "property" as "the land, the building and all other improvements thereon" owned in fee. Section 339-e (14) defines a "unit" as "a part of the property intended for any type of use", including, *inter alia,* "such appurtenances as garage and other parking space".

under section 99 (1) (b) of the Partnership Law. "Under [that] statute the only criterion for a formal accounting is that 'circumstances render it just and reasonable'." *(Matter of Brandt,* 81 AD2d 268, 282.) The complaint can reasonably be read to include allegations that an accounting would be just and reasonable in the circumstances presented.

■ Since dismissal of the complaint cannot be sustained on the motion court's rationale, Riverside's additional contentions, to the extent they are pursued on appeal, must be considered. It contends that "the continuing operations and obligations of the partnership include the $70,000 parking lot lease payments and sale leaseback type arrangements preclude the dissolution of the partnership." The motion court's holding that the five cited transactions did not constitute sale-leaseback agreements, as well as the reasoning upon which it based its conclusion, was correct. A sale-leaseback transaction is one in which property is sold to an investor and simultaneously leased back to the seller. (Cary, *Corporate Financing Through the Sale and Lease-Back of Property: Business, Tax, and Policy Considerations,* 62 Harv L Rev 1, 2 [1948].) Here, Tiffany Place retained the right to act as a leasing or rental agent for the buyers of some of the units but not to lease the units themselves. Since it did not acquire the lease to any of these units, none of the transactions constitute sale-leaseback arrangements. Nor is there anything in the language of paragraph 21 which allows Riverside to assert disputes with, *inter alia,* certain unit owners as an exception to dissolution if substantially all the property has been sold. Moreover, paragraph 22 (a) of the partnership agreement expressly empowers Riverside, as the liquidating trustee, to make determinations as to "the amount or necessity of cash reserves to cover contingent liabilities" after dissolution. Thus, adequate reserves can be maintained to cover any potential liability and thus unresolved matters afford no justification for a deferral of a final accounting. Similarly, that Tiffany Place will continue to receive income from the assignment of its parking lot lease does not preclude dissolution.

■ For the reasons articulated in CCG's opposing papers, Riverside's voluntarily rendered "interim accounting" does not provide a complete documentary defense to the accounting CCG seeks. Unlike *Raymond v Brimberg* (99 AD2d 988), upon which Riverside relies, where the plaintiff was unable to give an articulable objection to the accounting that had been voluntarily rendered and could allege only its "dissatisfaction"

with the materials it obtained, CCG has offered several specific reasons why the accounting is deficient. Nor does the complaint fail to state a cause of action because it does not allege wrongful conduct on the part of Riverside; CCG's right to an accounting upon dissolution is provided for in the partnership agreement itself. In any event, "[a]n allegation of wrongdoing is not an indispensable element of a demand for an accounting where the complaint indicates a fiduciary relationship between the parties or some other special circumstances warranting equitable relief." *(Morgulas v Yudell Realty,* — AD2d — [May 3, 1990].)

In urging affirmance of the dismissal of the complaint, Riverside also argues that CCG lacks standing to sue for an accounting derivatively on behalf of the partnership. Not only has CCG properly alleged a derivative claim, it has, in any event, also brought this action in its individual capacity. The right of a limited partner to bring an action on behalf of the partnership to enforce a right belonging to the partnership is beyond dispute. *(See, e.g., Riviera Congress Assocs. v Yassky,* 18 NY2d 540.)* "Since [the] general partners will not sue because they are the very persons who would be liable * * * the limited partners, as *cestuis que trustent,* should be permitted to initiate the necessary legal proceedings on behalf of [the partnership]" *(supra,* at 548). The principle announced in *Riviera Congress* has been codified in Partnership Law §§ 115-a, 115-b, and 115-c. The right to an accounting is an obligation that Riverside owes to the partnership as a whole and is not an exclusive right belonging to the partners.

Finally, defendants argue that, with respect to any derivative claim, CCG has failed to meet the demand requirements of section 115-a of the Partnership Law because the complaint alleges that it demanded that Riverside provide an accounting rather than demanding that Riverside commence a lawsuit against itself. Section 115-a (3) permits a limited partner to bring a derivative action if the general partners with the authority to bring suit have refused to do so, or if demanding the general partners to institute such a suit would be futile. The section also expressly requires that the plaintiff plead a demand or its reasons for not doing so. Although the futility of demanding that Riverside sue itself is self-evident, CCG clearly has not met the latter pleading requirement. Nor is there any doubt, contrary to CCG's argument, about what is meant by a demand that the general partners "secure the initiation of such action". It obviously refers not to the mere

demand for an accounting but to subdivision (1) of section 115-a, which refers to an action "brought in the right of a limited partnership to procure a judgment in its favor, by a limited partner, additional limited partner, or substituted limited partner." Nevertheless, the accounting repeatedly demanded by CCG is precisely the same accounting as is sought by this lawsuit. Thus, in the context of this case, a demand for an accounting is no different from a demand that an action for such an accounting be initiated.

Accordingly, the order of the Supreme Court, New York County (Carmen Beauchamp Ciparick, J.), entered February 17, 1989, granting defendants' motion to dismiss the complaint, should be reversed, on the law, with costs and disbursements, the motion denied and the complaint reinstated.

KUPFERMAN, J. P., MILONAS, ASCH and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on or about February 17, 1989, unanimously reversed, on the law, the motion denied and the complaint reinstated. Appellant shall recover of respondents $250 costs and disbursements of this appeal.