TUCKER LEASING CAPITAL CORP., a Connecticut corporation, Plaintiff,

v.

MARIN MEDICAL MANAGEMENT, INC., a California corporation, Gene Farber and Henry Grausz, Defendants.

No. CV 92–1904 (ADS).

United States District Court, E.D. New York.

Sept. 30, 1993.

**950**

Winick & Rich, P.C., New York City, for plaintiff; Jeffrey H. Weinberger, of counsel.

Evans, Farber & Cipinko, San Francisco, CA, for defendants; Jeffrey R. Sears, of counsel.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This diversity action was commenced by the plaintiff in April, 1992 to recover on a written equipment lease and personal guaranty signed by the named individual defendants. The plaintiff claims that the corporate defendant Marin Medical Management, Inc. ("Marin Medical") has defaulted on the lease by failing to make any payment since February, 1992. Neither of the Guarantors has cured Marin's default nor made any payments under the guaranty.

Shortly after the plaintiff initiated this lawsuit, the corporate defendant Marin Medical filed a Chapter 11 petition in bankruptcy on April 24, 1992, and is now subject to the jurisdiction of the United States Bankruptcy Court for the Northern District of California. The Chapter 11 filing was made in response to the creditors of Marin Medical filing a Chapter 7 petition against the corporation on April 2, 1992.

Defendants Grausz and Farber, the principals of Marin, shortly thereafter filed a Notice of Removal, attempting to remove this case to the United States Bankruptcy Court upon the advice of their bankruptcy counsel, on the belief that this matter was a related or core proceeding to the case against Marin Medical. By letter dated June 30, 1992, Tucker's counsel requested that the defendants withdraw or modify the Notice of Removal to properly reflect protection only of the corporate debtor Marin Medical. When the defendants declined, Tucker applied to the Bankruptcy Court for remand as to the Guarantors Grausz and Farber. On August 13, 1992, the United States Bankruptcy Court for the Eastern District of New York (Duberstein, J.), granted the remand, but declined to award attorney's fees to Tucker.

In light of the Bankruptcy Court action and the accompanying automatic stay provision of 11 U.S.C. § 362, the plaintiff cannot proceed at this time against the corporate defendant.

The plaintiff-lessor now moves for summary judgment, pursuant to Fed.R.Civ.P. 56(c), with respect to the third cause of action set forth in the complaint against the individual Guarantors.

## I. BACKGROUND

### A. The Parties

The plaintiff Tucker Leasing Capital Corp. ("Tucker") is a Connecticut corporation with its principal place of business located in Port Washington, New York. Tucker is in the business of providing financing for the purchase or lease of computers in a variety of production, manufacturing, medical and office equipment throughout the United States.

The defendant Marin Medical is a corporation organized and existing under the laws of the State of California with its principal place of business located at 2200 Larkspur Landing Circle, Larkspur, California 94939. Marin Medical is a medical management service organization.

The defendant Henry Grausz is a resident and citizen of Ross, California, and is one of the two principals, officers and directors of Marin Medical.

The defendant Gene Farber is also a resident and citizen of Ross, California, as well as a principal, officer and director of Marin Medical. Farber is also a partner in the law firm of Evans, Farber & Cipinko, counsel for the defendants in this action.

Although not a party to this action, Cycare Systems, Inc. contracted with Marin Medical to provide certain computer system hardware and software.

## B. *The Causes of Action*

On March 26, 1991, Marin Medical purchased certain medical and office equipment from its manufacturer, Cycare Systems, Inc. ("Cycare"), pursuant to a written agreement. Tucker was not a party to this purchase agreement between Marin Medical and Cycare, and the plaintiff corporation is not mentioned anywhere in the agreement.

In order to finance its acquisition of the equipment, Marin Medical entered in a written equipment lease agreement with the plaintiff Tucker, also dated March 26, 1991. Tucker subsequently filed with the California Secretary of State the necessary Form UCC-1 Financing Statements covering the Marin Medical equipment.

On March 28 and March 29, 1991, specifically to induce Tucker to enter into the lease, the defendants Grausz and Farber executed separate guarantees, each by their terms "irrevocably and unconditionally" guaranteeing payment and performance of Marin Medical's obligations under the lease (Levy Affidavit, Exhibits I and J). Defendant Grausz executed a Delivery and Acceptance Receipt on behalf of Marin Medical on March 28, 1991. The receipt expressly accepts delivery of all equipment contemplated by the lease, "fully installed and in good working condition," and acknowledges receipt of that Equipment "after full inspection thereof as satisfactory for all purposes of the above-referenced Lease."

The equipment lease required Marin Medical to make sixty (60) monthly rental payments to Tucker in the amount of $4,417.61, plus applicable taxes, commencing March 28, 1991, with an initial payment of $4,682.67 (Levy Affidavit, ¶ 1). The lease was amended by letter agreement dated April 25, 1991, to reflect that the last 59 payments were to be $5,624.59 per month, with "all other terms and conditions of the [Lease] [to] continue in full force and effect" (Levy Affidavit, Exhibit L).

Each of the Guarantors "jointly and severally" guaranteed both payment and performance of all Marin Medical obligations under the lease to Tucker, as obligee. Each guaranty also designates New York law as controlling its interpretation and enforcement, and includes consent to the jurisdiction of all state and federal courts sitting within New York State. Each guaranty granted Tucker, as obligee, "the right to proceed against the [G]uarantors, or any of them, immediately upon any default by the obligor in payment or performance of any obligations ... [under the Lease]" (Plaintiff's Rule 3(g) Statement, citing Levy Affidavit, Exhibits I and J, p. 1, ¶ 1).

The complaint is based on the lease and guaranty pursuant to which payments are due and owing by the defendants. The complaint alleges the following causes of action: (1) against Marin Medical, based on its default, for the amount due and owing under the lease, in the sum of $252,202.44, plus applicable property taxes, costs, expenses, and attorney's fees; (2) for immediate repossession of the equipment based on the default; and (3) by reason of Marin Medical's default, liability of the Guarantors in the amount of $252,202.44, together with personal property taxes, costs and attorney's fees.

## C. *The Answer*

The defendants filed an "Answer of Defendants Henry Grausz and Gene Farber to Plaintiff's Complaint; Cross-Complaint; Counterclaim." For the most part, the defendants stated that they were "without information sufficient to form a belief as to the matters asserted." The defendants claimed that the Court lacks jurisdiction and that venue in this District is improper. No other defenses were asserted in the Answer.

The cross-complaint consists of a single cause of action for fraudulent misrepresentation against CYCARE. The defendants contend that at all times during the negotiations for the purchase and sale of the equipment, CYCARE represented to the defendants that the equipment was worth at least $194,254.00. In the Fall of 1991, Marin Medical went out of business and sold its major assets. It consulted a computer broker to attempt to sell the equipment. The broker appraised the value of the equipment at $10,000 and indicated that the purchase price paid by the defendants was completely overvalued at the time of the purchase. In fact,

the broker purportedly advised the defendants that the equipment was not worth much more than $10,000 when it was purchased. The individual defendants state that they executed the guarantees based upon the assumption that the equipment had a certain value, "so if it were necessary, we could sell it without a substantial loss. We assumed and relied on the sales price" (Farber Affidavit, ¶¶ 6, 7).

The defendants also assert a counterclaim against Tucker for what appears to be a claim of "fraud in the inducement," alleging that "due to Tucker's close business relationship with CYCARE on this and other equipment leasing matters, Tucker was aware of and actively suppressed its knowledge that the Equipment was below the value represented by CYCARE and suppression of these facts was likely to mislead Cross-complainants and did in fact mislead Cross-complainants in the light of other representations made by Cross-defendant CYCARE" (Answer, ¶ 34).

## II. *PROCEDURAL SETTING*

In view of the automatic stay provisions of the Bankruptcy Code as applied to the corporate defendant, the plaintiff at this time is able to proceed in this case only against the Guarantors. The plaintiff moves, pursuant to Fed.R.Civ.P. 56(c), for an order (1) granting summary judgment on Tucker Leasing's third claim for relief with respect to the written guaranty signed by defendants Farber and Grausz; (2) dismissing the defendant's counterclaim on the ground that it is barred by operation of law; and (3) imposing sanctions against counsel for the defendants for frivolous litigation tactics.

In support of the motion, the plaintiff has submitted a statement pursuant to Local Civil Rule 3(g), claiming that there are no genuine issues to be tried. The plaintiff contends that the undisputed issues are as follows: (1) Tucker was not a party to the purchase agreement between Marin Medical and CYCARE and is not mentioned anywhere in that contract; (2) Marin Medical entered into a separate equipment lease agreement with the plaintiff on March 26, 1991 to finance its acquisition of the equipment; (3) on March

29, 1991, to induce the plaintiff to enter into the lease, the two individual defendants executed separate guarantees "irrevocably and unconditionally" securing payment and performance of Marin Medical's obligations under the lease; (4) the lease expressly provided that the plaintiff/lessor "makes no warranty to anyone as to any matter whatsoever"; (5) the lease could not be cancelled by the lessee during the term of the lease; (6) the lessee's failure to pay any monthly rental fee when due was an "Event of Default"; (7) the lease contained an integration clause; (8) one of the remedies prescribed is acceleration of rent for the full lease term; (9) the plaintiff has a right to proceed against the Guarantors in the event of default; (10) Tucker paid CYCARE for the equipment, but Marin Medical defaulted on the lease and has made no payment since February, 1992; and (11) neither Marin Medical nor the Guarantors have cured the default.

In support of this motion, the plaintiff has submitted the affidavit of Peter Levy, a Vice–President of Tucker who supervises all collection matters concerning every lease transaction to which the plaintiff Tucker is a party. After reciting most of the facts contained in the plaintiff's Rule 3(g) statement, Levy adds that the lease also contains an integration clause providing that the written instrument "reflects the entire agreement between the parties and may not be altered, amended, modified, terminated or otherwise changed, except in writing and signed by an executive officer of Lessor and Lessee" (Levy Affidavit, ¶ 14).

Levy also claims that the defendants have asserted no affirmative defenses in their Answer and that the counterclaim is without merit and is legally barred by specific provisions of both the Lease and Receipt. In this regard, Levy states the following:

    1. the language in the lease expressly renders Marin Medical's obligation to pay rent under the lease "absolute and unconditional," and precludes the assertion of any counterclaim in purported contravention of that obligation;

    2. no viable affirmative defense has been raised which would establish a genu-

ine, triable issue of fact with respect to either the lease or the guarantees;

3. the defendants' counterclaim has been sufficiently probed through discovery, yielded no other pertinent documents or allegations, and in any event is barred by the underlying documents and applicable law;

4. the plaintiff is therefore entitled to summary judgment on the guarantees as a matter of law.

In responding to the motion, counsel for the defendants moves pursuant to Fed. R.Civ.P. 56(c) and 56(f), seeking "a continuance to allow discovery in order for defendants to present by affidavit the facts essential to justify defendants' opposition" to the plaintiff's motion (Defendants' Memorandum of Law at p. 2). Counsel adds that "defendant believes and herein asserts that a viable defense and counterclaim can be asserted as a matter of law but lacks sufficient facts to support the claim at this time" (id.). Essentially, the defendants argue that the facts necessary to oppose the motion for summary judgment are largely in the plaintiff's exclusive control.

The only information supplied by a party with actual knowledge of the incidents at issue is the affidavit of Gene Farber, one of the principals of Marin Medical. Farber states that he and the other principal of Marin Medical, Henry Grausz, assumed and relied on the sales price set forth by CY-CARE. According to Farber, Tucker made certain representations relating to the financing of the equipment which were material consideration in the decision to enter into the Guarantees. Upon subsequently hearing the broker's appraisal that the equipment was worth $10,000, the principals came "to believe that we have been defrauded" (Farber Affidavit, ¶ 7).

In conceding that they did not assert any affirmative defenses in their Answer, counsel for the defendants also moves for leave to amend the pleading pursuant to Fed.R.Civ.P. 15(a). In his Affidavit, counsel states the following:

"4. It was only through inadvertence that the affirmative defenses were absent from Defendants' Answer. I had returned from a month-long leave of absence the day before Defendants' Answer was due and in the rush to file the Answer in an expeditious and timely manner apparently missed putting the affirmative defenses in the Answer.

5. In Defendants' proposed Amended Answer, Defendants set forth Affirmative Defenses that the Lease and Guarantees at issue in Plaintiff's Complaint were procured and induced by fraudulent misrepresentations on behalf of Plaintiff.

6. In Defendants' proposed Amended Answer, Defendants also amend their counterclaim against Plaintiff to include a count for fraudulent misrepresentation by Plaintiff.

7. Pursuant to Rule 56(f) Defendants seek discovery of facts necessary for a defense to Plaintiff's Action and their Motion for Summary Judgment. The majority of the facts that Defendants need for their defense are exclusively within the Plaintiff's control because they relate to the knowledge Plaintiff had about the value of the equipment leased to Defendant Marin Medical Management, Inc.

8. ... Defendants believe that they can establish that Plaintiff knew that the equipment leased to MMM was in fact worth only a fraction of what it was represented to be worth. If knowledge is shown, defendants GRAUSZ and FARBER would clearly be able to assert a defense of fraud in the inducement of the guarantees" (Sears Affidavit).

According to the defendants, they have not engaged in formal discovery for several good faith reasons, including the fact that they attempted to have this matter tried as a "core proceeding" in the Bankruptcy Court for the Northern District of California where Marin Medical has filed its Chapter 11 petition, and that the parties entered into settlement negotiations in October 1992 which, although achieving some progress, did not come to fruition.

With regard to the guarantees, the defendants argue that those signed by Grausz and Farber do not contain the type of specific disclaimer language in the guaranty itself

which would foreclose the defendants' rights to assert fraud in the inducement as a defense and as a counterclaim. Counsel maintains that "[w]hile the lease states *expressly* that the obligation to pay rent is 'absolute and unconditional' and that the obligation continues regardless of 'any claim, defense, set-off, counterclaim, reduction or abatement of any kind whatsoever ...,' *the guaranty does not*" (Defendants' Memorandum in Opposition at p. 6) (emphasis in the original). According to counsel, no provision is made in the document for waiver of defenses as is expressly made in the lease. At best, counsel claims, the language is ambiguous as to the waiver and should be construed against the maker.

In his Reply Affidavit, Peter Levy states that the Guarantors' Affidavits offer "far more by way of excuses for their slipshod defense of this action than probative evidence" (Levy Reply Affidavit, ¶ 3). Levy also notes that issue was joined in this case almost five months before the defendants' made this application, and that while the plaintiff was propounding a set of interrogatories and document requests in anticipation of seeking summary judgment, "defendants sat by and conducted no discovery of their own" (¶ 9). The plaintiff further argues that

"[i]f the gravamen of their position is that Tucker misrepresented the Equipment's real value, then they should be able to describe that supposed fraud with particularity, and at the very least identify the individuals involved. . . .

Indeed, even assuming for purposes of this motion that only Tucker can testify as to its own 'knowledge' of the Equipment's value (Sears Aff't, ¶ 8), surely defendants could still specify such minimal information as the declarant(s) of any alleged representations, let alone the persons to whom they were made and manner of communication. Their inability to do so exposes their proposed claim of fraud—and any need for 'formal' discovery (*Id.*, ¶ 10)—as a sham" (¶¶ 10, 11).

Counsel for the plaintiff also argues that the motion to amend should be denied because the "Amended Answer containing a virtual 'grab bag' of twenty defenses, ranging from the ridiculous ... to the sublime ..." is a futility (Plaintiff's Reply Memorandum at p. 6). According to the plaintiff, while a few of the defenses may seem colorable, defendants have offered no proof to support them and their affidavits are silent on each of these theories. Counsel argues that if any of the defenses were truly viable, the defendants surely would have personal knowledge to present.

With regard to the defendants' assertions concerning the language of the guaranty as "boilerplate," and ambiguous, counsel for the plaintiff argues that the defendants cite no authority for their proposition and simply ignore the plain language of the guaranty which "absolutely" assures both "payment and performance" of "all obligations" under the lease.

Finally, counsel for the plaintiff observes that the defendants have failed to file an opposing Rule 3(g) statement. The plaintiff argues that the consequence of this omission is that all material facts presented in the moving party's Rule 3(g) statement are "deemed to be admitted" by operation of law.

### III. THE GOVERNING LAW

#### A. Rule 56(c)

Fed.R.Civ.P. 56(c) provides in pertinent part as follows:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 [2d Cir.1990], and the movant is entitled to judgment as a matter of law (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see also* Fed. R.Civ.P. 56[c]. The Court must, however,

resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 [2d Cir.1990]; *Liscio v. Warren*, 901 F.2d 274, 276 [2d Cir.1990]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]).

■ Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists (*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990] [quoting Fed.R.Civ.P. 56[e]; *see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989]). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see Converse v. General Motors Corp.*, 893 F.2d 513, 514 [2d Cir. 1990]).

■ However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment (*see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990]). Finally, the Court is charged with the function of "issue finding," not "issue resolution" (*Eye Assocs., P.C. v. Incomrx Sys. Ltd. Partnership*, 912 F.2d 23, 27 [2d Cir.1990]).

**B.  *Rule 56(f)***

■ Rule 56(f) provides as follows:

"(f) When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

In order to obtain a continuance to permit additional discovery, the proponent seeking the continuance must establish that he was denied reasonable access to material requested and that the material requested constitutes potentially favorable information. In addition, the proponent must identify specific issues to be disclosed if he is granted a reasonable opportunity to pursue additional discovery (*Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. 248 [S.D.N.Y.1987], *aff'd*, 842 F.2d 612 [2d Cir.], *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 [1988]).

**C.  *New York Law***

■ As to substantive law, the parties agreed by contract that New York law applies to any disputes arising out of the agreement and the guaranty. In construing contractual provisions, the Court must first determine whether the language at issue is ambiguous (*Barbier v. Shearson Lehman Hutton, Inc.*, 752 F.Supp. 151 [S.D.N.Y. 1990]). This determination is one of law (*Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 [2d Cir.1990]). Under New York law, if a contract is unambiguous on its face, the "parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself 'rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable'" (*Care Travel Co. v. Pan American World Airways, Inc.*, 944 F.2d 983, 987–88 [2d Cir.1991], *quoting Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 [2d Cir. 1990]).

In discussing the issue of ambiguity in the context of New York law, the Second Circuit recently stated the following:

"Contract language is unambiguous when it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.' *Hunt Ltd., supra*, 889 F.2d at 1277, (quoting *Breed Insurance Co. of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 [1978]). Conversely, a term is ambiguous when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 [2d Cir.1987] (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.,* 284 F.Supp. 987, 994 [S.D.N.Y.1968]). The determination as to whether the contract language is readily susceptible to one or more interpretations is made by the court with reference to the contract alone. *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 [2d Cir.1990]; *W.W.W. Assoc., supra,* 565 N.Y.S.2d at 443, 566 N.E.2d at 642 (*Care Travel Co. v. Pan American World Airways, Inc., supra,* 944 F.2d at 988).

"A familiar and eminently sensible proposition of law is that when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (*W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 [1990]). With respect to interpreting contractual provisions, the law in New York is as follows:

"In interpreting a contract, the intent of the parties governs; *Sheets v. Sheets,* 22 A.D.2d 176, 180 [1st Dept.1964], 254 N.Y.S.2d 320. A contract should be construed so as to give full meaning and effect to all of its provisions; *Trump–Equitable Fifth Ave. Co. v. H.R.H. Construction Corp.,* 106 A.D.2d 242, 244 [1st Dist.1985], 485 N.Y.S.2d 65, *aff'd.* 66 N.Y.2d 779 [1985], 497 N.Y.S.2d 369, 488 N.E.2d 115; *Integrated Sales v. Maxwell Corp. of America,* 94 A.D.2d 221, 227 [1st Dept. 1983], 463 N.Y.S.2d 809. Words and phrases are given their plain meaning; *Mazzola v. County of Suffolk,* 143 A.D.2d 734, 735 [2d Dept.1988], 533 N.Y.S.2d 297. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement; *see CCG Associates I v. Riverside Associates,* 157 A.D.2d 435, 440 [1st Dept.1990], 556 N.Y.S.2d 859.

Where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law and the case is ripe for summary judgment;

*Pharmaceutical Horizons v. Sterling Drug,* 127 A.D.2d 514, 515 [1st Dept.1987], 512 N.Y.S.2d 30, *mot. for lv. dismd.,* 69 N.Y.2d 984, 516 N.Y.S.2d 1027, 509 N.E.2d 362 ..." (*American Express Bank Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, 276, 562 N.Y.S.2d 613 [1st Dept.1990], *appeal denied* 77 N.Y.2d 807, 569 N.Y.S.2d 611, 572 N.E.2d 52 [1991]).

"When an agreement's terms are clear and unambiguous, there is no need to resort to other means of interpretation to determine their meaning" (*Matter of Western Union Tel. Co. v. American Commun. Assn. C.I.O.,* 274 A.D. 754, 79 N.Y.S.2d 545 [1st Dept. 1948], *aff'd,* 299 N.Y. 177, 184, 86 N.E.2d 162 [1949]). "Moreover, parol evidence of the parties' intentions as to the terms of a contract is inadmissible when the contract is unambiguous" (*CCG Associates I v. Riverside Associates, supra [citing Mercury Bay Boating Club v. San Diego Yacht Club,* 76 N.Y.2d 256, 557 N.Y.S.2d 851, 557 N.E.2d 87 [1990]; *Namad v. Salomon Inc.,* 74 N.Y.2d 751, 753, 545 N.Y.S.2d 79, 543 N.E.2d 722 [1989]).

## IV. DISCUSSION

The Court now turns to the specific issues raised by the motions, and in turn discusses: (1) the liability of the Guarantors on the written guaranty; (2) the defendants' counterclaim for suppression of facts by Tucker, or fraud in the inducement; and (3) the plaintiff's motion to impose sanctions on the defendants for frivolous litigation tactics.

## A. Liability of the Guarantors

On March 26, 1991, in order to induce Tucker to enter into the Marin Medical lease, the defendants Grausz and Farber each executed an individual, personal "Guaranty" of Marin Medical's payment and performance under the equipment lease, which was contemporaneously executed. The guaranty provided as follows:

"the Guarantors and each of them does jointly and severally guarantee to Obligee the prompt payment of all moneys now due or hereafter becoming due by the Obligor [Grausz/Farber] to the Obligee [Tucker],

and the timely performance by the Obligor of all of its Obligations to the Obligee, whether the same arises pursuant to the instruments or otherwise ..."

In addition, the guaranty further provided that

"[t]he obligee shall have the right to proceed against the Guarantors, or any of them, immediately upon any default by the Obligor in payment or performance of any Obligations and shall not be required to take any action or proceedings of any kind against the Obligor or any other party liable for the Obligor's debts or Obligations or any security which the Obligee may hold."

The guaranty also stated that "[t]his Guaranty is and shall be construed to be an absolute, unlimited and continuing Guaranty of payment and performance," that it shall "continue until all Obligations under the Instruments ... have been fully paid, satisfied and discharged," and that it "shall be governed ... by the law of the State of New York."

In order to recover under the terms of a continuing Guaranty, the obligee must establish a prima facie case, namely, "proof of the note, the guarantees, and the failure to make payment in accordance with their terms" (*Key Bank of Long Island v. Burns*, 162 A.D.2d 501, 556 N.Y.S.2d 829, 830 [2d Dept. 1990]). The Court finds that the plaintiff has established a prima facie case: (1) Tucker has presented the equipment lease, a separate and independent writing reflecting Marin Medical's underlying obligation to Tucker; (2) the guarantees expressly reflect consideration flowing to the Guarantors by "induc[ing]" Tucker to enter into the [Lease]"; and (3) failure to pay.

Where the non-movant fails to submit a Rule 3(g) statement, the Court is required to take the allegations of the moving party's 3(g) statement as fact, and all material allegations as admitted and uncontroverted (*King v. New York Telephone Company, Inc.*, 873 F.2d 36, 37–38 [2d Cir.1989]; *Campbell v. Pan American World Airways, Inc.*, 668 F.Supp. 139, 142 [E.D.N.Y.1987]). Taking the assertions of the plaintiff's Rule 3(g) statement as fact, the Court finds that

Marin Medical defaulted in payment under the Lease in February, 1992, leaving an accelerated balance due of $281,229.50, plus local use/sales taxes of $20,389.14, administrative fees of $2,586.38, applicable personal property taxes, and all costs of collection, including attorney's fees. Neither Marin Medical nor the individual Guarantors has cured the default. In their responses to interrogatories, the defendants have admitted that no payments have been made since February, 1992.

To determine the nature of each guaranty, the Court must give effect to the plain and unambiguous meaning of the language employed (*see Travelers Indemnity Co. v. Buffalo Motor & Generator Corp.*, 58 A.D.2d 978, 397 N.Y.S.2d 257 [4th Dept. 1977]; N.Y.Jur. § 70). The writing should as a rule "be enforced according to its terms" (*W.W.W. Assocs. v. Giancontieri, supra*, 77 N.Y.2d at 162, 565 N.Y.S.2d at 442, 566 N.E.2d at 641). The Court notes that it has previously construed the identical lease and guaranty provisions in *Tucker Leasing Capital Corp. v. Pizzuti Development, Inc.*, CV 91–0238 (E.D.N.Y. January 7, 1992), and awarded summary judgment to the plaintiff for the full balance due. Both in *Pizzuti* and the case now before the Court, the plain and unambiguous meaning of the words of the guaranty reflect that they are guarantees of payment and not of collection since they provide for payment by the guarantors immediately upon default (*see Guardsman Lease Plan, Inc. v. Gibraltar Transmission Corp.*, 129 Misc.2d 887, 494 N.Y.S.2d 59, 62 [Sup.Ct. Suffolk Cty.1985]; *see also Mastan Company Inc. v. Weil*, 84 A.D.2d 657, 444 N.Y.S.2d 315 [3d Dept.1981] [guarantor who signed guaranty agreement providing that guarantor unconditionally and irrevocably guaranteed payment of indebtedness was liable for such payment following default]).

Upon review of the submitted documents, the Court finds that the guaranty agreements unequivocally obligate the individual defendants Grausz and Farber to pay any amounts owed by Marin Medical to Tucker under the equipment lease. The Court finds no merit in the defendants' argument that

although the equipment lease expressly provides for a waiver of defenses, the guaranty does not contain specific disclaimer language that would foreclose the right to assert fraud in the inducement as a defense. Although fraud in the inducement is a cognizable defense in certain contract actions, it is not a defense available to the Guarantors in this case. The Court finds the terms of the guaranty to be clear and unambiguous—the language speaks for itself. Consequently, the Guarantors are personally liable for payment and performance under those terms. The Court finds no genuine issue for trial as to the validity of the guarantees and therefore holds that Tucker is entitled to summary judgment on the guaranty agreement.

**B.  The Defendants' Counterclaim**

██ Having awarded the plaintiff summary judgment on the guaranty agreements, the Court now turns to the defendants' asserted counterclaim.

At paragraphs 33 through 38 of their Answer, the defendants alleged that the plaintiff Tucker was a participant in a scheme to defraud Marin Medical and the Guarantors. The defendants claim that CYCARE misrepresented the value of the leased equipment and that because of Tucker's business relationship with CYCARE, Tucker "actively suppressed its knowledge that the Equipment was below the value represented by CYCARE" (Answer, ¶ 34).

First, the Court draws attention to the fact that the plaintiff Tucker was not a party to the purchase agreement under which the equipment was sold. Marin Medical's obligation to pay rent to Tucker under the lease was "absolute and unconditional." So far as disputes arising under the lease were concerned, the defendants' sole recourse was the other party to the agreement—CYCARE. The relevant lease provision confirms this fact:

"NO WARRANTIES BY LESSOR: Lessor neither being the manufacturer of nor a dealer in the equipment *makes no warranty to anyone as to any matter whatsoever express or implied* ... Lessee shall make claim on account thereof *solely against the manufacturer and/or the ven-*

*dor and shall nevertheless pay lessor all rent and other monies payable hereunder"* (emphasis supplied).

██ Under New York law, to establish a cause of action for fraud in the inducement, a plaintiff must establish a representation of material fact which is untrue and known to be untrue or recklessly made, and one which is "offered to deceive the other party and to induce them to act upon it, causing injury" (*Jo Ann Homes at Bellmore v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 [1969]; *see Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1496 [2d Cir.1992]; *Atlantic Welding Services, Inc. v. Westchester Steel Fabricators, Corp.,* 173 A.D.2d 1073, 1074, 570 N.Y.S.2d 410 [3d Dept.1991]; *Chopp v. Welbourne & Purdy Agency Inc.,* 135 A.D.2d 958 [3d Dept.1987] ). The party alleging fraud in the inducement bears the burden of proving the above elements by clear and convincing evidence.

This Court chooses to follow the line of cases in this District and within this Circuit, as well as the relevant New York State cases, which hold that the defendants have waived the defense of fraud in the inducement by signing an unconditional and irrevocable guaranty, irrespective of any circumstances that might constitute a legal or equitable discharge or release of the guarantor (*see, e.g., Preferred Equities Corp. v. Ziegelman,* 190 A.D.2d 784, 593 N.Y.S.2d 548, 549 [2d Dept.1993]; *Zaro Bake Shop, Inc. v. David,* 176 A.D.2d 721, 574 N.Y.S.2d 803 [2d Dept. 1991]; *Green v. Darwish,* 171 A.D.2d 644, 567 N.Y.S.2d 126 [2d Dept.1991]

In particular, the Court looks to the leading case of *Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985), in which the New York State Court of Appeals held that "fraud in the inducement of a guarantee by corporate officers of the corporation's indebtedness is not a defense to an action on the guarantee when the guarantee recites that it is absolute and unconditional irrespective of any lack of validity or enforceability of the guarantee...." In *Plapinger,* the plaintiff bank provided a line of credit in excess of $15 million to the defendant officers and directors of a holding com-

pany that had a number of retail department stores (*id.* at 310, 485 N.E.2d at 975). After the holding company defaulted and subsequently filed a petition in bankruptcy, the banks brought an action against the guarantors, who raised defenses of fraud in the inducement and negligent misrepresentation.

Special Term struck the affirmative defenses and counterclaims in *Plapinger*, holding that by the specific language of the unconditional guaranty, the defendants had waived their right to assert the defenses and counterclaims (*id.*). The Appellate Division affirmed, as did the Court of Appeals, holding that the defendants were foreclosed by the rule of *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 [1959] from establishing any reliance on such representations. In discussing the guaranty, Judge Meyer noted the following:

"... following extended negotiations between sophisticated business people, what has been hammered out is a multimillion dollar personal guarantee proclaimed by defendants to be 'absolute and unconditional.' It is unrealistic in such circumstances to expect an express stipulation that defendants were not relying on a separate oral agreement to fund an additional multimillion dollar line of credit, when they themselves have denominated their obligation unconditional, and have reinforced that declaration by their agreement that the 'absolute and unconditional' nature of their guarantee was 'irrespective of (i) any lack of validity ... of the ... Restated Loan Agreement ... or any other agreement or instrument relating thereto' ...

Though not the explicit disclaimer present in *Danann*, the substance of defendants' guarantee forecloses their reliance on the claim that they were fraudulently induced to sign the guarantee by the banks' oral promise of an additional line of credit. *To permit that would in effect condone defendants' own fraud in 'deliberately misrepresenting [their] true intention'*" (*Plapinger*, 66 N.Y.2d at 95, 495 N.Y.S.2d at 312, 485 N.E.2d 977).

Although the Second Circuit has not yet addressed the scope of *Plapinger*, it has discussed *Danann:*

"*Danann* ... stands for the proposition that where the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship. Animated by principles of traditional contract interpretation, the rule of *Danann* has exhibited great resilience in the face of efforts to delimit its expanse" (*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.* 748 F.2d 729, 735 [2d Cir.1984]).

Where *Danann* involved specific contractual language, the contract in *Plapinger* used only the terms "absolute and unconditional." Nonetheless, the Court of Appeals affirmed the grant of summary judgment despite the existence of disputed issues of material fact and enforced the guaranty without regard to the alleged fraud because the contract was the "product of negotiations between sophisticated business people who knowingly bargained for an unconditional obligation" (*Generale Bank v. Wassel*, 779 F.Supp. 310, 317 [S.D.N.Y.1991]). As Judge Leisure noted in *Wassel*, the Courts of the Southern District of New York have given a broad reading to *Plapinger* and *Danann*, "with guarantors being held to an unconditional guarantee and waiver of defenses" (*Generale Bank v. Wassel*, 779 F.Supp. at 317; *see e.g., Thornock v. Kinderhill Corp.*, 749 F.Supp. 513, 519 [S.D.N.Y.1990]; *Midwest Corp. v. Global Cable, Inc.*, 688 F.Supp. 872, 875 [S.D.N.Y.1988]). In *Wassel*, Judge Leisure ultimately held that fraudulent inducement defense raised by the defendant contradicted the waiver of defenses in an Estoppel Letter signed by the defendant, and found that "even if there are disputed issues of fact on these matters, the controlling law dictates that these issues are not material, and do not preclude a grant of summary judgment" (779 F.Supp. at 320).

In light of the foregoing, the Court finds that even accepting the possibility of disputed facts in these circumstances, the defendants' counterclaim does not raise a material issue of fact or defense which would defeat the plaintiff's motion for summary judgment dismissing the counterclaim.

### C. *Leave to Amend*

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend a plead-

ing] shall be freely given when justice so requires." (See also Gumer v. Shearson, Hammill & Co., 516 F.2d 283, 287 [2d Cir. 1974].) Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial (see Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, ——, 9 L.Ed.2d 222 [1962]; accord Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co., 657 F.Supp. 136, 141 [E.D.N.Y. 1987]; see also Health–Chem Corp. v. Baker, 915 F.2d 805 [2d Cir.1990]). The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial (see Panzella v. Skou, 471 F.Supp. 303, 305 [S.D.N.Y.1979]), and "[u]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend" (Lerman v. Chuckleberry Pub., Inc., 544 F.Supp. 966, 968 [S.D.N.Y.1982], rev'd on other grounds sub nom., 745 F.2d 123 [2d Cir.1984], cert. denied, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 [1985]).

Although Fed.R.Civ.P. 15(a) requires that "leave to amend shall be freely given when justice so requires" (see Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 [1962]), the Supreme Court stated in Foman that denial of a Rule 15(a) motion may be appropriate in instances of futility of the amendment. (Foman, at 182, 83 S.Ct. at 230 (emphasis supplied); accord Ruffolo v. Oppenheimer & Company, 987 F.2d 129, 131 [2d Cir.1993] [where granting leave to amend is unlikely to be productive, it is not an abuse of discretion to deny leave to amend]; Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co., 657 F.Supp. 136, 141 [E.D.N.Y.1987]; see also Health–Chem Corp. v. Baker, 915 F.2d 805 [2d Cir.1990] ["where ... there is no merit in the proposed amendments, leave to amend should be denied"]).

■ In assessing the defendants' request for leave to amend, the Court looks to the defendants' argument concerning Fed. R.Civ.P. 56(f). A party seeking discovery under Rule 56(f) must file an affidavit explaining "(1) what facts are sought and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts" (Hudson River Sloop Clearwater v. Dept. of Navy, 891 F.2d 414, 422 [2d Cir.1989], citing Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 [2d Cir. 1985]). The defendants have not met this burden. The sole support for the requested continuance is the Farber Affidavit, which does not satisfy any of these elements. In particular, the Court notes the only three paragraphs of the affidavit which touch upon the necessary showing:

"5. During the course of lease negotiations with Tucker Capital, we sought to assure ourselves that the equipment sold to Marin Medical was worth the price represented to us by Cycare. We made that determination, in part, as a result of the representations made by Tucker Capital, including their willingness to finance the equipment for the agreed upon purchase price.

6. In the fall of 1991, Marin Medical went out of business and sold its major assets. At that time, Marin Medical consulted a computer broker to attempt to sell the equipment. The computer broker appraised the value of the equipment at $10,-000. The broker indicated that the purchase price paid for the subsequent equipment was completely overvalued at the time of the purchase. Only eight months after the equipment was purchased it was appraised at $10,000 and the broker believed it was not worth more when purchased.

7. Henry Grausz and I executed the guaranties based upon the assumption that the computer equipment had a certain value, so if it were necessary, we could sell it without a substantial loss. We assumed and relied on the sales price. Tucker Capital's representations relating to the financing of the equipment were a material consideration in our decision to enter into the Guarantees. The computer broker's ap-

praisal, including his opinion that the equipment was worth $10,000 leads us to believe that we have been defrauded."

The defendant Guarantors have not suggested any specific additional evidence they need to obtain, but instead simply suggest that it is too soon to entertain a motion for summary judgment (*see Connecticut National Bank v. Trans World Airlines, Inc.*, 762 F.Supp. 76 [S.D.N.Y.1991] ). Such an assertion is insufficient to warrant further discovery. The Court also finds insufficient the statements by counsel in his affidavit that "the majority of the facts that Defendants need for their defense are exclusively within the Plaintiff's control because they relate to the knowledge Plaintiff had about the value of the equipment leased to Defendant Marin Medical Management, Inc." (Sears Affidavit, ¶ 7). The Court finds this statement enigmatic since the defendants concede that they have not engaged in any formal discovery.

According to counsel, the defendants believe that the plaintiff acquired title to the equipment and leased it back to Marin Medical at a monthly rate which represented a set value for the equipment. The defendants further "believe that they can establish" that Tucker knew the equipment was worth only a fraction of the represented price.

■■■ The Court may reject a request for further discovery pursuant to Rule 56(f) if the request is based on pure speculation as to what would be discovered (*see Cubby, Inc. v. Compuserve, Inc.*, 776 F.Supp. 135, 143 [S.D.N.Y.1991]; *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d at 926–927] ). The assertions here amount to no more than unsubstantiated, conclusory allegations. The defendants have made no showing that they did not have reasonable access to such disclosures prior to bringing their Rule 56(f) request (*see Hudson River Sloop Clearwater v. Dept. of Navy*, 891 F.2d at 422).

The defendants do not set forth any particulars regarding any meetings, conversations, or correspondence concerning the alleged fraud. In addition, no details concerning dates, times, places, nor the alleged content of the misrepresentations are supplied. Simple conclusory allegations of a fraudulent business practice are insufficient to state a claim for fraud in the inducement. Even if the defendants had obtained what they hoped to uncover, the information would not have been sufficient to defeat summary judgment on the guarantees (*id.* at 422).

The Court therefore finds that the defendants have not met the threshold requirements of Rule 56(f). Therefore, applying the standards set forth in *Foman*, the Court finds that any proposed amendment to the Answer or additional time to conduct discovery would be futile.

### D. Sanctions

■■■ The imposition of sanctions under Fed.R.Civ.P. 11 is mandated when the Court finds that one of the following situations exists:

"(1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands" (*International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 [2d Cir.1989] ).

*See also Investors Ins. Co. of Am. v. Dorinco Reinsurance Co.*, 917 F.2d 100, 106 [2d Cir. 1990] ).

■■■ However, sanctions should not be imposed so as to chill creativity or stifle enthusiasm or advocacy (*see Security Indus. Ass'n v. Clarke*, 898 F.2d 318, 322 [2d Cir. 1990]; *see also McMahon v. Shearson/American Express, Inc., supra*, 896 F.2d at p. 22). Once a violation is found to exist though, the Rule is mandatory and the Court *must* impose a sanction (*see O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 [2d Cir.1990] ).

■■■ In determining whether Rule 11 has been violated, the Court must apply the "objectively reasonable" test (*see Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 [2d Cir.1985]; *see generally* Note, *Rule 11 And Papers Not Warranted By Law*, 58 Fordham L.Rev. 1085 [1990] [discussing varying standards employed by the courts] ). Having examined the voluminous

**962**

papers submitted previously in this case, as well as those concerning the motions for sanctions, the Court does not find any specific evidence that a reasonable inquiry into the basis for the pleading was not made. Furthermore, the Court does not agree that under existing precedents, there was absolutely no chance of success on the defendants' claim, nor does the Court find that the arguments set forth were unreasonable. Therefore, the Court declines to award sanctions under Rule 11 and the plaintiff's motion is denied.

## V. *CONCLUSION*

Based on the foregoing, the Court summarizes its rulings: (1) the plaintiff's motion, pursuant to Fed.R.Civ.P. 56(c), for summary judgment on the plaintiff's third cause of action against the individual Guarantors, is granted; (2) the plaintiff's motion to dismiss the defendants' counterclaim on the ground that it fails to raise a triable issue of fact and is barred by operation of law is granted; and (3) the motion by the plaintiff for the imposition of sanctions, pursuant to Fed.R.Civ.P. 11, is denied.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff, and jointly and severally against the defendant Guarantors Grausz and Farber in the sum of $252,-202.44 on the personal guaranty, plus the applicable personal property taxes, costs and reasonable attorney's fees as provided in the Guaranty.

In light of the fact that all actions against the corporate defendant Marin Medical are subject to the automatic stay provisions of 11 U.S.C. § 362, the Court hereby dismisses the action as against the corporate defendant, without prejudice.

The Clerk of the Court is further notified that this action closes the case.

SO ORDERED.