MARGARET B. SHEETS, Respondent, *v.* LAWRENCE S. SHEETS, Appellant.

First Department, December 8, 1964.

*S. Lawrence Atkins* for appellant.

*Morris Ploscowe* of counsel (*Harvey I. Sladkus* with him on the brief), for respondent.

VALENTE, J. This appeal presents the question as to what extent parties to a separation agreement may effectively contract for arbitration of disputes concerning the beneficial interests of the children of the marriage.

The parties entered into a separation agreement in January, 1962. Thereafter, the wife took up residence in Florida, where she obtained a decree of divorce approving the separation agreement. Paragraph 3 of that agreement provided that the wife shall have custody of the children and control and supervision of their upbringing, subject to specified visitation rights to the husband. It also provided for consultation by the wife with the husband on all matters of importance relating to the children's health, welfare and education, for notification to the husband in the event of serious injury or illness to any child, and for the encouragement of respect and love for both parents.

Insofar as is pertinent at this time, the agreement provided that " [i]f the parties cannot reach an agreement as to any matter within the scope of Paragraph 3 * * * the dispute shall be settled by arbitration in accordance with the Rules of the American Arbitration Association ''.

The husband served a demand for arbitration seeking, among other things, damages for violation of the agreement with respect to visitation, with respect to the secular and religious education of the children, and as to a claimed alienation of the children's affection for their father. The husband has appealed from an order staying arbitration of such demands.

It is now settled law in this State that provisions in separation agreements for the arbitration of disputes regarding the amount the husband is to pay for the support of the wife and children will be enforced. (*Matter of Robinson*, 296 N. Y. 778; *Matter of Luttinger*, 294 N. Y. 855; *Matter of Lasek*, 13 A D 2d 242.) But it has been held that there may be no arbitration of a dispute between parents as to rights of visitation (*Matter of Michelman* [*Michelman*], 5 Misc 2d 570) or as to custody and visitation (*Matter of Hill* [*Hill*], 199 Misc. 1035).

Yet, there seems to be no clear and valid reason why the arbitration process should not be made available in the area of custody and the incidents thereto, i.e., choice of schools, Summer camps, medical and surgical expenses, trips and vacations. In fact, the American Arbitration Association is now equipped to arbitrate marital disputes arising out of separation agreements. (Marital Disputes Arbitration [Memorandum, Nov. 1963].) (For a general discussion of the subject, see Lindey, Separation Agreements and Ante-Nuptial Contracts [Rev. ed., 1961], § 14–29; Committee Decision of Child Custody Disputes and the Judicial Test of '' Best Interests '', 73 Yale L. J., p. 1201 *et seq.*)

There should be some clarification and restatement of the proper position to be taken by courts as to arbitration provisions in separation agreements which affect matters of custody

and visitation of children. Courts will, as a general rule, enforce an agreement between a husband and wife regarding custody of children so long as the agreement is in the best interests and welfare of the children. The inherent power of the courts to safeguard the welfare of children would not, however, be dissipated by a separation agreement that provided for settlement of custody disputes and related matters by some arbitration tribunal. Necessarily, an award rendered upon a voluntary submission of any such disputes to arbitration would still be subject, in a direct proceeding affecting the child alone, to the supervisory power of the court in its capacity as *parens patriæ* to the child. (*Finlay* v. *Finlay*, 240 N. Y. 429; *People ex rel. Herzog* v. *Morgan*, 287 N. Y. 317.)

To the extent that such an award conflicted with the best interests of the child, courts would treat it as a nullity insofar as the child is concerned, irrespective of what binding effect it may have on the parents. An arbitration award under such circumstances could no more infringe the paternal duty of the court to guard the child's welfare, than a foreign decree of a court rendered before the child became subject to our courts' jurisdiction. (*Matter of Bachman* v. *Mejias*, 1 N Y 2d 575; *Matter of Hicks* v. *Bridges*, 2 A D 2d 335, 339; cf. *Ford* v. *Ford*, 371 U. S. 187.) The controlling factor would be, as always, what was for the best interests of the child; and the provisions of any award could be challenged in court on that basis at the instance of a parent, a grandparent, an interested relative, or the child himself by a friend. (See 6 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7002.14.) The challenge might take the form of opposition to confirmation of the award, of a cross application invoking the court's paternal jurisdiction, or an independent summary proceeding.

Thus, the best interest of the child is assured protection by this omnipresent judicial check against arbitration awards in custody matters attaining the unassailable finality of awards in other arbitrations. Nor could any such award in a custody matter be given any *res judicata* consequences against the child, who was not a party to the arbitration. However, such an award would effectively bind the parents of the child to the extent that it settled their disputes, but only insofar as the award did not adversely affect the substantial interest of the child.

Hence, upon any showing that a provision of an award might be adverse to the best interests of a child, the court could take such action that was necessary for the best interest of the child. Once the court's paternal jurisdiction is invoked, it would examine into the matter, *de novo,* and in doing so could utilize

the proof adduced before the arbitration tribunal, could call for new proof, or could employ a combination of both. The court could then determine what was necessary for the best interest of the child.

However, the award could not be effectively attacked by a dissatisfied parent merely because it affected the child. Obviously every such award will have that effect. What must be shown to evoke judicial intervention is that the award adversely affects the welfare and best interest of the child—clearly a much narrower issue. Thus, for example, an award might provide (1) that a father have visitation rights on one particular day of the week instead of another day; (2) that the child wear clothes purchased from some high-priced tailoring establishment rather than another in a lower-price range; (3) that the child should be accompanied to school by a parent or governess; (4) that the child should have no, or a particular, religious training; or (5) that the child go to a Summer camp in the mountains rather than one located at sea level. For our purpose, these examples, which could be multiplied indefinitely, will suffice to clarify the distinction sought to be drawn.

All of the above situations present determinations which affect the child; yet the only one which could be deemed to have an adverse effect is the one dealing with religious training. It might be that the provision regarding the proper camp to attend would also fall into the category of adverse effects if it were shown that a Summer camp at a high altitude would be inimical to the child's health. An arbitration award which purported to adjudicate the latter two items could successfully be attacked in court, as hereinabove indicated, by opposition to a motion to confirm the award or by an independent proceeding. However, as to the other examples, a court could confirm the award upon the theory that while they affected the child they could not reasonably be deemed to have any substantial effect on the child's best interest and welfare.

Since only with the coming in of an arbitration award can the court initially rule on the question as to whether any direction adversely affects the best interest and welfare of the child, it would seem that on any application to stay an arbitration demanded by a parent or to compel arbitration, the court would be concerned, at that preliminary stage, only with whether the agreement between the parties provided for arbitration of the dispute.

With these caveats, submission of disputes in custody and visitation matters to voluntary arbitration need no longer receive general interdiction, and such procedure should be

encouraged as a sound and practical method for resolving such disputes. But as indicated hereinabove, arbitration awards which may adversely affect the best interest of the child will be disregarded by the courts whose paternal jurisdiction is paramount. As a consequence, there may in certain instances be a duplication in effort, where the court decides to look into the matter *de novo* and reaches the same or different result.

The general discussion has been prompted by the fact that the separation agreement, *sub judice*, contains a broad provision for arbitration of disputes as to control, supervision and upbringing of children, visitation rights and of the general welfare of the children. While we hold that the demands for arbitration before us do not fall within the scope of the arbitration provision — broad as it is — we do not want to foreclose the parties from seeking arbitration upon proper demands consistent with this opinion.

The demands of the appellant husband do not fall within the purview of the arbitration provision. The husband does not seek to remedy any alleged grievances claimed to be in violation of the agreement, but seeks money damages which are to be set off against his obligation to pay alimony under the agreement. There is nothing in the separation agreement which can reasonably be construed as obligating either party to submit to arbitration the matter of assessment of punitive damages for a violation of any of the provisions of paragraph 3 of the agreement.

The arbitration clause in issue is not an agreement to arbitrate any dispute under the contract. In commercial cases it has been held that an agreement to arbitrate all controversies under the contract confers jurisdiction on arbitrators to assess damages. (*Matter of Utility Laundry Serv.* [*SKLAR*], 300 N. Y. 255; *Matter of General Footwear Co.* v. *Lawrence Leather Co.*, 252 N. Y. 577.) The intent of the parties is the governing consideration. Here the arbitration clause merely provides for the settlement of the dispute " [i]f the parties cannot reach an agreement as to any matter within the scope of Paragraph 3 ". Since paragraph 3 is concerned only with the custody, visitation rights and other matters affecting the welfare of the children, there could be no warrant, were arbitration permissible, for any award of punitive damages for failure to comply with the agreement. Therefore, apart from any conclusion as to whether there may be arbitration as to the matters affecting the custody and welfare of the children, we would have, in any event, stayed the demanded arbitration as not within the scope of the arbitration clause.

The order should, therefore, be affirmed, without costs and without prejudice to the service of a proper demand for arbitration as to any disputes, consonant with this opinion.

BOTEIN, P. J., BREITEL and RABIN, JJ., concur; McNALLY, J., concurs in result.

Order, entered on April 6, 1964, unanimously affirmed, without costs and without prejudice to the service of a proper demand for arbitration as to any disputes, consonant with the opinion of this court filed herein.