OPINION OF THE COURT
Howard Miller, J.
Motion by plaintiff to hold defendant in contempt, and cross motion by defendant for reargument of a prior motion for pendente lite support and confirmation of an arbitration award.
It is ordered that the motion to hold defendant in contempt is denied; and it is further ordered that the cross motion for re-argument is granted, and upon reargument, the September 10, 1997 order of this court is modified with respect to child sup *510 port solely to the extent that defendant shall not be required to pay the children’s school tuition of $1,666 per month. Except as so modified, the September 10, 1997 order is adhered to; and it is further ordered that the cross motion to confirm the arbitration award of the Rabbinical Court of Mechon Hahoyroa dated September 30, 1997 is denied.
Motion for Contempt
Plaintiff having failed to demonstrate that she attempted to exhaust other, less drastic, remedies to enforce the pendente lite support order is not entitled to an order holding defendant in contempt. Defendant’s net worth statement indicates that he has assets within the jurisdiction available to satisfy his current obligations (Snow v Snow, 209 AD2d 399).
Cross Motion to Reargue
Defendant, in his net worth statement, alleges that he has "no regular salary — Past 3 months’ averaged $1,666.00.” Defendant is 45 years old, in good health, has a Master’s degree in music, and is self-employed by a corporation in which he holds 95% of the stock. The court finds defendant’s claimed income incredible, since he lists expenses of $2,992 a month, but income of only $1,666. Furthermore, it would appear the Rabbinical Court also found that defendant’s, ability to pay child support exceeded his claimed income, since it found him to be liable for child support of $250 a week and school tuition of $1,666 a month. Defendant has a 35% interest in a $1.3 million shopping center, and paid his attorneys a retainer of $3,500. Defendant fails to submit tax returns or any other documents which would support his claimed income, and it is apparent that defendant is able to determine the amount of salary he will receive from his corporation. Nevertheless, there is simply no evidence that defendant earns the $100,000 per annum claimed by plaintiff, and in view of the defendant’s now having submitted a net worth statement, his child support obligation will be reduced to basic child support of $2,500 per month, a sum very close to that determined by the Beth Din to be appropriate, as well as payment of unreimbursed medical costs. In the event it is determined at trial that defendant’s income is higher than alleged in the net worth statement, the amount of child support will be adjusted retroactively to comply with Domestic Relations Law § 240 (1-b).
*511 Beth Din Arbitration Award
Defendant now seeks to confirm the arbitration award of the religious tribunal, Beth Din, which is opposed by plaintiff on public policy grounds.
The uncertified translation of the arbitration award of the Beth Din indicates that paragraphs A through H inclusive relate to custody of, and visitation with, the children. Despite the existence of the agreement between the parties to arbitrate these issues, disputes over custody and visitation are not subject to arbitration (Cohen v Cohen, 195 AD2d 586; Glauber v Glauber, 192 AD2d 94) and will not be confirmed.
Paragraphs I and J award child support of $50 per week for each child, i.e., $250 per week for the five children, and direct defendant to pay tuition for all the children, which plaintiff advises is $1,666 per month.
Child support has long been held to be an arbitrable issue. In 1964, the First Department held that "It is now settled law in this State that provisions in separation agreements for the arbitration of disputes regarding the amount the husband is to pay for the support of the wife and children will be enforced” (Sheets v Sheets, 22 AD2d 176, 177, citing Matter of Robinson, 296 NY 778; Matter of Luttinger, 294 NY 855; Matter of Lasek, 13 AD2d 242). The decision notes, however, that "Necessarily, an award rendered upon a voluntary submission of any such disputes to arbitration would still be subject, in a direct proceeding affecting the child alone, to the supervisory power of the court in its capacity as parens patriae to the child” (at 178, citing Findlay v Findlay, 240 NY 429; People ex rel. Herzog v Morgan, 287 NY 317). In that decision, the Court noted, however, that custody and visitation matters should be submitted to arbitration, with certain caveats.
In 1966, the Court of Appeals cited the Sheets case (supra) with approval in a matter involving the arbitrability of child support claims, and noted that then-section 240 of the Domestic Relations Law did not contain any proscription against arbitration of child support (Schneider v Schneider, 17 NY2d 123).
In 1969, the Second Department refused to permit arbitration of the issue of child custody, although finding that arbitration "is useful when the mundane matter of the amount of support is the issue”, citing the Schneider case (supra) (Agur v Agur, 32 AD2d 16, 20).
In 1975, the Court of Appeals, in a case involving the arbitration of spousal support, held that "Notably, in matrimonial *512 cases, public policy considerations abound: viz. * * * parents are chargeable with the support of their children (Family Ct Act, §§ 413, 414) * * * Nonetheless, arbitration provisions in separation agreements have been enforced as to the amount a husband must pay for the support of his * * * child * * * (Schneider v Schneider, 17 NY2d 123)” (Hirsch v Hirsch, 37 NY2d 312, 315-316). The Hirsch case also noted that agreements to arbitrate custody and visitation rights have been upheld, citing the Sheets case (supra). Later that year, however, the Court of Appeals noted that "Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate. School matters are but one example; indeed, matters affecting marriage, child custody, and the like, are not subject to unbridled arbitrability” (Matter of Susquehanna Val. School Dist. [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617). In so holding, the Court in the Susquehanna case cited the Schneider and Sheets cases (supra).
In 1984 the Third Department addressed again the permissible scope of arbitration, and the grounds to vacate an award on nonstatutory grounds of public policy (Matter of Board of Educ. [McGinnis], 100 AD2d 330, 334), holding that "judicial interference [with the arbitration process] should await the results of the arbitration and a determination at that point made as to whether the award conflicts with policy.” In making that determination, the court must consider whether the dispute "centers on a matter of important governmental policy or State interest”, in which case "only a legally constituted tribunal and not an arbitrator may entertain jurisdiction over the controversy, since the informal, rule-free, virtually unreviewable arbitration process does not insure that contractual rights and responsibilities affected by the public interest will not be weakened or ignored” (Matter of Board of Educ. [McGinnis], supra, at 333, citing Matter of Wertheim & Co. v Halpert, 48 NY2d 681; Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 6211; Schneider v Schneider, supra). The Third Department noted that "Before courts may intervene in the name of the doctrine, the public policy at issue must be 'a strong one, amounting to gross illegality or its equivalent’, generally to be found in a 'readily identifiable source in the statutes or common-law principles’ ” (Matter of Board of Educ. [McGinnis], supra, at 333-334, citing Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 422).
*513 In 1993, the Court of Appeals closed the door on arbitration relating to custody of and visitation with children (Glauber v Glauber, supra). The Court found that, with respect to custody agreements between parents, the "responsibility of the courts always supersedes whatever bargain has been struck. The court must always make its own independent review and findings, and may award custody to one parent in the face of an agreement granting custody to the other if the best interests of the children require it * * * A court cannot be bound by an agreement as to custody and visitation, or either custody or visitation, and simultaneously act as parens patriae on behalf of the child”. (Supra, at 97-98.)
Thus, over the years, the Court of Appeals, while repeatedly holding that arbitration is a favored method of dispute resolution, has carved out exceptions to the arbitration process, and continues to permit a challenge to arbitration on public policy grounds (Board of Educ. v Christa Constr., 80 NY2d 1031). Custody of children, while once a proper subject for arbitration, is so no longer based upon the public policy of this State as it has evolved over the years.
The issue of the arbitrability of child support should now be revisited as well, in the light of the enactment of chapter 567 of the Laws of 1989 (commonly known as the Child Support Standards Act) (the Act). The executive and legislative branches of the New York State government joined to enunciate a strong public policy in New York State with respect to a minimum and adequate level of support for children. The State Executive Department Memorandum (1989 McKinney’s Session Laws of NY, at 2210-2211) in support of the legislation noted that:
"In determining the support amount, courts are guided by a non-binding list of statutory factors. Awards vary significantly from county to county and, within the same county, even from judge to judge * * *
"The use of a statutory method in the determination of child support award amounts in New York will bring equity to a system characterized by inconsistency and inadequacy.”
The legislative declaration preceding the Act notes that the Act is intended to address prior deficiencies in support obligations "by adopting guidelines that permit judicial discretion, and establish minimum and meaningful standards of obligations that are based on the premise that both parents share the responsibilities for child support” (L 1989, ch 567, § 1). The Act itself is comprehensive, and involves not only specific child *514 support guidelines, but specifies what income may be included and excluded for computation purposes, and an appropriate percentage of parental income to be applied to child support.
The arbitration award in this case is devoid of any detail regarding how the arbitrators’ decision was reached. There is no information with respect to the parties’ income, or whether any of the statutory requirements of Domestic Relations Law § 240 (1-b) were considered. The very paucity of the arbitration decision with respect to child support in this case argues in favor of adding child support, like custody and visitation, as issues not subject to arbitration. While it is true that the court continues to oversee such awards, plaintiff, by agreeing to arbitrate, was deprived of child support during the 21/2 years the arbitration was pending. At present the court may award child support only after proper application therefor. Given the current decisional law, children whose parents agree to arbitrate the issue of their support may, as in this case, be deprived of proper support for prolonged periods.
Nevertheless, whether arbitration of child support is appropriate is not the issue before the court. The sole issue to be determined in the posture of this case is whether the arbitration award is to be confirmed.
The court concludes that the historical authority for confirmation of child support awards made through an arbitration process, which does not employ the principles established in Domestic Relations Law § 240 (1-b), has been eroded, if not supplanted, by the strong public policy of this State set forth in that statute. Confirmation is therefore denied upon the ground that the child support award in this case, which fails to provide any information whatsoever as to how the amount was arrived at, is not in the best interests of the children and does not comply with current public policy.
That is not to say that arbitration of all child support is precluded; rather that an arbitration award for basic child support, if it is to be confirmed, must demonstrate at least minimal recognition of, and compliance with, Domestic Relations Law § 240 (1-b). Arbitration awards regarding spousal support, or child support in excess of the minimum guidelines, educational contributions, and other support not specifically governed by Domestic Relations Law § 240 (1-b), continue to be subject to prior case law.
Paragraph K of the arbitration award requires plaintiff to immediately withdraw all civil court proceedings, including the order of protection. Paragraph L prohibits the parties from *515 "informing on the other party to the authorities, in any way whatsoever, such as child protective services, social services, legal courts, etc. without written permission by the Beth Din.” Paragraph M prohibits the parties from slandering each other and requires the parties to turn to the Beth Din for any problem the parties may have. An arbitration award may not be confirmed if it directs acts which are contrary to public policy or would deprive parties of their constitutional right to seek redress or protection in the future under civil law (see, e.g., Matter of Mikel v Scharf, 85 AD2d 604; Matter of Mantell [Unipak Aviation Corp.], 28 AD2d 1134). While the parties may elect to arbitrate their differences in a religious tribunal, the tribunal cannot abrogate to itself exclusive jurisdiction over all civil and criminal matters involving the parties.