**In re James T. METZ, a/k/a James T. Metz, Jr., Debtor.**

**James T. Metz, a/k/a James T. Metz, Jr., Plaintiff,**

v.

**Poughkeepsie Savings Bank, FSB, Defendant.**

**Nos. CV 97–5163, CV 96–1263.**

United States District Court, E.D. New York.

March 18, 1999.

Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman, by Eugene P. Cimini, Jr., of counsel, Garden City, NY, for Kenneth P. Silverman, Chapter 7 Trustee.

Stein Riso Haspel & Jacobs LLP, by Joseph J. Haspel, of counsel, New City, New York, for the Poughkeepsie Savings Bank.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is an appeal from two separate decisions of the United States Bankruptcy Court. The first is a February 9, 1996 decision by United States Bankruptcy Judge Robert John Hall's holding PSB and John H. Adams, Esq., in civil contempt. The second is a July 15, 1997 decision by United States Bankruptcy Judge Francis G. Conrad granting Poughkeepsie Savings Bank's, FSB ("PSB") motion for summary judgment. The Court will examine the appeal of Judge Conrad's decision first as it provides the pertinent background for analysis of the appeal of Judge Hall's decision.

## I. THE JUDGE CONRAD APPEAL

The facts and lengthy history of this case have previously been set forth in this Court's decisions of September 22, 1995 (the "September 1995 Decision") and February 12, 1996 (the "February 1996 Decision") in related appeals bearing the docket numbers CV 93–5863 and CV 94–0358, respectively and will not be repeated in the entirety. The Court will, however, review some of the pertinent facts which are relevant to the outcome of this decision.

On February 12, 1988, Maplewood Land Development Company, Inc. ("Maplewood") borrowed $1,250,000 from Pawling Savings Bank, executing a promissory note and mortgage in favor of the bank. Debtor James T. Metz ("Metz" or the "Debtor"), the president of Maplewood, was named as the "individual guarantor" on that mortgage note, which was subsequently assigned by Pawling Savings Bank to PSB. On April 20, 1988, Metz borrowed $1.6 million from PSB. The loan was guaranteed by Maplewood. In order to secure the loan, Metz gave PSB a collateral assignment of purchase money mortgages and notes. Paragraph seven of the assignment stated that "the bank shall not be obligated to release any collateral furnished hereunder until all obligations of the borrower and/or guarantor to the bank have been paid in full. The bank shall have the right to demand and receive additional collateral for all and any part of the loan or loans."

In November 1988, Maplewood secured another loan from PSB that was consolidated with the February 1988 loan. These loans were separate from the April 20, 1988 loan. After the April 20, 1988 loan was repaid, Metz attempted to obtain the release of the collateral. PSB refused to return the collateral, however, as Maplewood defaulted on its consolidated loan. After many decisions by numerous courts including State Courts, the Bankruptcy Court, and two decisions by this Court which will be reviewed briefly, the essence of this appeal turns on whether the collateral assignment from Metz with regard to the April 20, 1988 loan agreement with PSB, cross-collateralizes the consolidated loans of February and November 1988 to Maplewood.

The Court will briefly review its two prior decisions, so that the context of this decision can be placed in its proper light. The Court's September 1995 Decision was based upon an appeal by PSB of two Orders by the United States Bankruptcy Court, dated October 6, 1993 and December 10, 1993 in *Metz v. Poughkeepsie Savings Bank,* Adv. Pro. No. 893–8295–20. The October 6, 1993 Order was a decision by Judge Hall that (1) granted summary judgment in favor of the plaintiff/Debtor Metz and directing turnover of the collateral to Metz; and (2) denied a motion by the defendant PSB seeking abstention by the Bankruptcy Court or dismissal of the adversary proceeding. In the December 10, 1993 Order, Judge Hall adhered

to his prior decision in response to PSB's re-argument motion.

On appeal of these orders, PSB argued that the Bankruptcy Court erred in granting summary judgment to Metz as it improperly gave preclusive effect to a State Court decision despite the fact that the Order was being appealed. PSB argued further that Judge Hall's decision granting summary judgment to Metz ignored the presence of disputed issues of material fact relating to various other loan agreements between the parties. This Court's September 1995 Decision affirmed Judge Hall's granting of summary judgment which directed the turnover of the collateral to Metz on the ground that the debtor's entitlement to the collateral was determined in an earlier state court action.

The Court's February 1996 Decision was based on PSB's motion, pursuant to Fed. R.Civ.P. 60(b)(1)(5) and (6), for an order relieving it from the Court's September 1995 Decision that, as previously described, granted summary judgment in favor of Metz and required that PSB turn over to Metz the collateral at issue. PSB also moved the Court for an order pursuant to Bankruptcy Rule 7062, staying enforcement of a Bankruptcy Court order that holds it in contempt if it failed to turn over the Collateral to the Chapter 7 Trustee. At oral argument on February 9, 1996, the parties informed the Court that PSB had complied with the Bankruptcy Court's order to turn over the Collateral, thereby rendering moot the portion of PSB's motion that sought to stay the contempt order.

The essence of PSB's argument on February 9, 1996, was that it should not be required to turn over the Collateral to the Chapter 7 Trustee, because by the terms of the relevant loan agreements, the Collateral secured Maplewood's indebtedness to PSB, and PSB was entitled to pursue a deficiency judgment against Maplewood under the Third Department's ruling. *See Poughkeepsie Savings Bank, FSB v. Maplewood Land Development Co., Inc.,* 210 A.D.2d 606, 620 N.Y.S.2d 161 (3d Dep't 1994).

PSB argued that in its September 1995 Decision, this Court examined only the PSB/Metz relationship, and overlooked the issue of Maplewood's indebtedness to PSB and Maplewood's relationship to the Collateral. PSB also argued that this Court incorrectly relied on a July 12, 1995 decision of United States Bankruptcy Judge Hall, which indicated that any order regarding turnover of the Collateral should await determination of the amount of the deficiency judgment against Maplewood by the Columbia County Supreme Court. On January 25, 1996, Judge Hall stated that on July 12, 1995 he declined to rule on the Trustee's motion to compel PSB to turn over the Collateral because at that time he was divested of jurisdiction by virtue of the then undecided appeal pending in this Court. On January 25, 1996, in accordance with this Court's affirmance of his prior grant of summary judgment to Metz, Judge Hall ordered PSB to turn over the collateral to the Trustee or be held in contempt.

The Court's February 1996 Decision held that:

> In the Court's view it is appropriate, based on the full record now before the Court, to revisit its September 22, 1995 Order, pursuant to Rule 60(b)(6), which permits granting relief from a judgment for "any other reason" than those enumerated in other subsections of the Rule. Common sense and a basic view of the law suggest that the Collateral, which is now in the hands of the Trustee, should not have been taken from Poughkeepsie prior to the determination of whether Poughkeepsie has any right to it based on Maplewood's obligation to Poughkeepsie. Stated simply, the bank may be entitled to the Collateral to recover a deficiency judgment against Maplewood.

> At the present time, however, the Court realizes that there are a series of decisions in this case directing turnover of the Collateral to Metz or the bankrupt estate. In this regard, the Court recognizes the importance in the law of the principle of finality and again notes that Poughkeepsie failed to appeal from the September 22, 1995 decision affirming summary judgment in favor of the debtor Metz with regard to his entitlement to the Collateral. However, those decisions determined that such

turnover was appropriate without consideration of the Maplewood deficiency judgment.

Balancing these interests, the Court is compelled to do what is right, just and fair. *See Nemaizer [v. Baker], supra*, 793 F.2d [58] at 62 [(1986)] ("Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments"). In addition, the Court notes that on July 12, 1995, Judge Hall apparently had similar apprehensions when he stated that it was appropriate to wait for a state court determination of Maplewood's deficiency liability.

\* \* \*

This Court agrees with the reasoning and comments of Judge Hall. To enable Judge Hall to effectuate the plan that he discussed in his July 12, 1995 Order, this Court determines that its September 22, 1995 order affirming summary judgment in favor of Metz should be vacated.

The Court remanded the case to Judge Hall to determine the extent, if any, of Maplewood's deficiency and to address the issue of whether, in view of the State court's determination regarding Maplewood's deficiency, if any, the Collateral should have been turned over by PSB to the Metz bankrupt estate or whether, based on a deficiency judgment against Maplewood, PSB is entitled to the use of the collateral.

On July 15, 1997 Judge Conrad granted PSB's motion for summary judgment and directed that "all money, assets and proceeds thereon, previously turned over or assigned to the Trustee ... by the [PSB], ... be returned to [PSB]...." The Trustee claims that Judge Conrad's denial of his motion for summary judgment and the granting of summary judgment to PSB was error because, as a matter of law, the Collateral property is property of the Debtor's estate and thus properly belongs to the Trustee.

■ As stated above, paragraph seven of the April 20, 1988 loan agreement between Metz and PSB stated that "[the] Bank shall not be obligated to release any collateral furnished hereunder until all obligations of the borrower and the guarantor to the bank have been paid in full, and the bank can demand additional collateral for all or any of the loan or loans."

■ As this Court has previously recognized, "[i]n construing contractual provisions, the Court must first determine whether the language at issue is ambiguous." *Tucker Leasing Capital Corp. v. Marin Med. Management, Inc.*, 833 F.Supp. 948, 955 (E.D.N.Y.1993) (citing *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F.Supp. 151 (S.D.N.Y.1990)). This is a question of law. *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990). "Under New York law, if a contract is unambiguous on its face, the 'parties' rights under such contract should be determined solely by the terms expressed in the instrument itself 'rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable.'" *Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 987–88 (2d Cir.1991) (quoting *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir.1990)).

In discussing the issue of ambiguity, the Second Circuit has stated that "[c]ontract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Hunt Ltd. v. Lifschultz*, 889 F.2d 1274, 1277 (2d Cir.1989) (quoting *Breed v. Insurance Co. of North Am.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 (1978)). The Second Circuit also stated in *Walk–In Med. Ctrs. Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987) that a term is ambiguous when it is "'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y.1968)).

■ The determination of whether the contract language is readily susceptible to one or more interpretations is made by the court considering the contract alone. *See Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990); *W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639, 642 (1990).

■ "A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *W.W.W. Assocs.,* 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639, 642. In interpreting a contract [under the laws of New York], the intent of the parties governs. *Sheets v. Sheets,* 22 A.D.2d 176, 180, 254 N.Y.S.2d 320, 325 (1st Dep't 1964). The contract should be construed so as to give full meaning and effect to all of its provisions. *Trump-Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp.,* 106 A.D.2d 242, 244, 485 N.Y.S.2d 65, 67 (1st Dep't 1983); *aff'd,* 66 N.Y.2d 779, 497 N.Y.S.2d 369, 488 N.E.2d 115 (1985). "Words and phrases . . . are given their plain meaning." *Mazzola v. County of Suffolk,* 143 A.D.2d 734, 735, 533 N.Y.S.2d 297 (2d Dep't 1988). Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement. *See CCG Assocs. I v. Riverside Assocs.,* 157 A.D.2d 435, 440, 556 N.Y.S.2d 859, 862 (1st Dep't 1990).

It is clear that the plain meaning of the loan agreement indicates that prior obligations and future advances to both Metz and Maplewood are collateralized under the terms of the April 20, 1988 agreement. Therefore, by the plain terms of the agreement, while the April 20, 1988 loan was repaid, the collateral at issue necessarily should remain in the possession of PSB as a result of the default in the February and November 1988 consolidated loans. In fact, in its February 1996 decision, this Court held that " . . . the plain language of the relevant loan agreement provides that Poughkeepsie is not obligated to release any collateral prior to discharge of all of the obligations under the agreement of both the borrower Maplewood and guarantor Metz. In sum, by the terms of the loan agreement with Maplewood, the collateral formerly held by Poughkeepsie was to secure the Maplewood loan." Based upon the clear meaning of the loan agreement as well as the Court's prior decision, the Court agrees with and affirms Judge Conrad's July 15, 1997 decision granting summary judgment in favor of PSB permitting it to retain the collateral.

## II. *THE APPEAL OF JUDGE HALL'S CONTEMPT DECISION*

PSB and Jon H. Adams, Esq. ("Adams"), the attorney for PSB, appeal from the February 9, 1996 Order of Judge Hall, which held them in civil contempt for failure to comply with prior orders of the Bankruptcy Court and this Court.

Specifically, the challenged February 9, 1996 Order, which followed rulings made on the record at a motion hearing on January 25, 1996, held that (1) PSB and Adams were in contempt of the Bankruptcy Court's orders dated October 6, 1993 and December 10, 1993 as affirmed by this Court's September 1995 Decision which directed the turnover of the collateral; (2) PSB and Adams had five days from January 25, 1996 to purge themselves of contempt by turning over the Collateral to the Trustee; (3) failure to timely purge would result in a fine of $500.00 per day until the collateral in question was turned over to the Trustee; (4) a formal accounting was to be prepared and served by Adams upon the Trustee; and (5) a stay of related state court proceedings was vacated. In the Order dated October 6, 1993 and upon reargument on December 10, 1993 (the "turnover orders"), the Bankruptcy Court determined that the collateral held by PSB and Adams was the property of the Debtor; granted summary judgment to the Debtor; and ordered that the collateral be turned over to the Debtor. The Bankruptcy Court's Orders were affirmed by this Court its September 1995 Decision.

Thereafter, on January 25, 1996 and February 9, 1996, the Bankruptcy Court made the rulings challenged in this appeal. Subsequently, in this Court's February 1996 Decision, whereby the Court vacated its affir-

mance of the orders of the Bankruptcy Court that granted summary judgment to the debtor's estate and directed turnover of the collateral to the Trustee. It is not disputed that upon the Bankruptcy Court's determination that PSB and Adams were in contempt, the collateral was turned over to the Trustee prior to the date on which monetary sanctions would have been imposed. Thus, monetary sanctions are not at issue on this appeal.

In the present appeal, PSB and Adams argue that the turnover orders of the Bankruptcy Court were rendered uncertain and ambiguous by a July 12, 1995 ruling of that court, so that the finding of contempt was unsupported. It should be noted, however, that the contempt order was not based upon the July 12, 1995 ruling. It is only a contention by PSB and Adams that the July 12, 1995 ruling rendered the turnover orders uncertain.

The Second Circuit recently reiterated the standard guiding the Court's review of a contempt order as follows:

> A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict. *See Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc.,* 341 F.2d 101, 102 (2d Cir.1965) (per curium). More specifically, a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *See New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). A clear and unambiguous order is one that leaves "no uncertainty in the minds of those to whom it is addressed," *Hess v. New Jersey Transit Rail Operations, Inc.,* 846 F.2d 114, 116 (2d Cir.1988), who "must be able to ascertain from the four corners of the order precisely what acts are forbidden," *see Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n,* 889 F.2d 389, 395 (2d Cir.1989), *cert. denied,* 494

U.S. 1030, 110 S.Ct. 1478, 108 L.Ed.2d 615 (1990).

*King. v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir.1995); *see also Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir.1995).

The United States Supreme Court has held that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties. Such obedience is mandated even if the order was erroneously issued, unless reversed by "order and proper proceedings." *United States v. United Mine Workers,* 330 U.S. 258, 291–301, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Howat v. Kansas,* 258 U.S. 181, 189–90, 42 S.Ct. 277, 66 L.Ed. 550 (1922); *United States v. Thompson,* 319 F.2d 665, 667 (2d Cir.1963). Errors must be corrected by appeal and not by disobedience. *Brougham v. Oceanic Steam Navigation Co.,* 205 F. 857, 860 (2d Cir.1913).

In seeking a reversal of a court's contempt order, the party alleged to have disobeyed the order cannot dispute the validity of the underlying order in order to claim that contempt is unwarranted. *Id.* Even a correct and good-faith belief that an order is defective, misguided or erroneous, is an insufficient basis upon which a party may unilaterally disregard a court's order. The Second Circuit has described the criteria for holding an individual in contempt as follows:

> In order to hold the alleged contemnor in contempt, the Court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that the order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order.

*Huber v. Marine Midland Bank,* 51 F.3d 5, 10 (2d Cir.1995). The Second Circuit has expressly stated that "an order issued by a court must be obeyed by one subject to it and that if he disobeys he may be punished for contempt even if the order is subsequently ruled to have been erroneous." *In re Feit & Drexler, Inc.,* 760 F.2d 406 (2d Cir.1985) (citation omitted).

PSB and Adams contend that the Bankruptcy Court erred in finding them in

contempt of orders directing a turnover of the collateral to the debtor's estate because those orders were not clear and unambiguous. In support of their argument, PSB and Adams note this Court's recognition in its prior decisions of the tangled procedural web ensnaring this litigation and frustrating resolution of the parties' dispute.

While the Court continues to note the somewhat complex issues in this litigation in its various state and federal forums, the Court disagrees with the interpretations by PSB and Adams of a July 12, 1995 comment by Judge Hall and its alleged impact on the turnover orders.

On July 12, 1995, Judge Hall heard argument on a motion by the Trustee that sought an order directing PSB and Adams to turn over the collateral. In declining to rule on the Trustee's motion, Judge Hall noted that the state court should determine the extent to which the collateral would attach to a deficiency judgment against a third party, namely Maplewood. He further stated:

> This Court has already ruled in the orders dated October 6, 1993 and December 10, 1993, that the collateral was to be turned over. At that time, the Court was apprized of the litigation that had been pursued by the parties and the results that had been obtained. There is an appeal of this Court's orders, a stay was granted by the District Court of this Court's ruling so this Court's ruling could be pursued at an Appellate level. That pursuit resulted in the December 1994 order. The parties are now in the positions they were in at the time the appeal to the District Court was filed. There is outstanding litigation that must be resolved before this Court will put its imprimatur on another order with respect to the collateral issue. In the interest of pursuing comity and avoiding the collection of a multitude of judicial determinations at odds with each other, this Court declines to rule on the instant motion.

PSB and Adams contend that "they were relying upon and abiding by a decision of the Bankruptcy Court to await a final determination of State Court litigation." Appellant's Reply Brief, at 2. This Court notes, as it did in its February 1996 Decision, that although PSB and Adams argued that the July 12, 1995 decision of Judge Hall altered the course of the litigation, their appeal to this Court from the Bankruptcy Court's turnover orders was not withdrawn. PSB and Adams characterize the July 12, 1995 ruling of Judge Hall and his prior orders directing them to turn over the collateral as "competing orders." They find such conflicting orders created "an uncertainty on the part of Poughkeepsie and Adams with respect to what was required at any given point in time." Appellants' Brief, at 6. The Court disagrees.

In the Court's view, Judge Hall's decision on July 12, 1995 was, as he described it in the record of the contempt motion hearing on January 25, 1996, "a determination not to make a determination" based on a lack of jurisdiction. January 25, 1996 Transcript, at 14. The appeal of the Bankruptcy Court's turnover orders deprived that court of jurisdiction to make a ruling with regard to the parties' right to the collateral. The Court is not persuaded by the appellants' argument that Judge Hall's July 12, 1995 decision to decline to rule on the Trustee's motion rendered the turnover orders and this Court's affirmance of them without effect. Nor does this Court's February 1996 Decision vacating the September 1995 Decision vitiate the validity of the contempt order. The Bankruptcy Court found PSB and Adams in contempt on February 9, 1996, while this Court's February 1996 decision was dated February 12, 1996. Therefore, at the time of the alleged contempt, this Court's September 1995 decision was in full force and effect. That order specifically stated "it was proper for Judge Hall to grant summary judgment to Metz on the ground that Metz had established the right to have the Collateral turned over to him in the prior state court action."

█ As stated above, the court's order must be viewed from the perspective of how the parties stood before the court at the time the order issued, and not with the improved vision of hindsight. *Sigmoil Resources N.V. v. Fabbri*, 228 A.D.2d 335, 337, 644 N.Y.S.2d 503, 505 (1st Dep't 1996). Viewing the circumstances from that perspective, the Court finds that the Bankruptcy Court correctly

determined that PSB and Adams failed to comply with its orders dated October 6, 1994 and December 3, 1993, as affirmed by this Court on September 22, 1995, which clearly directed a turnover of the collateral. The subsequent proceedings do not validate the actions of PSB and Adams in violating the October 6, 1993 and December 10, 1993 Orders of the Bankruptcy Court and this Court's September 1995 Decision.

### III. *CONCLUSION*

Having reviewed the parties' submissions, it is hereby

**ORDERED,** that United States Bankruptcy Judge Francis G. Conrad's July 15, 1997 decision is affirmed in its entirety and the appeal is hereby dismissed; and it is further

**ORDERED,** that United States Bankruptcy Judge Robert John Hall's February 9, 1996 Order of contempt is affirmed and the appeal is hereby dismissed; and it is further

**ORDERED,** that the Clerk of the Court is directed to close the cases under docket numbers 97 CV 5163 and 96 CV 1263; and it is further

**SO ORDERED.**